UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANCHEZ Y MARTIN, S.A. DE C.V.,<br><br>Plaintiff,<br><br>v.<br><br>DOS AMIGOS, INC., etc., et al.,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No.: 17CV1943 LAB (JMA)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE WHY A CONTEMPT CITATION SHOULD NOT ISSUE AGAINST ALIA CAPITAL PARTNERS, INC.**<br>**[ECF No. 20]** |

Presently before the Court is a motion filed by Plaintiff/Counterdefendant Sanchez Y Martin, S.A. de C.V. ("SYM") for an order to show cause why a contempt citation should not issue against non-party Alia Capital Partners, Inc. ("Alia"). (ECF No. 20.) For the reasons set forth below, SYM's motion for an order to show cause is DENIED.

I.     BACKGROUND

In 2013, SYM, a Mexican stock company, and Defendant/Counterclaimant Dos Amigos, Inc. ("2A"), a California corporation, entered into a written agreement titled *Contrato de Consignación de Mercancías* (the "Consignment

Agreement"), pursuant to which 2A purchased goods from SYM on credit terms to sell in the United States. (Compl., ¶¶ 7-8.) In October 2015, the principals of SYM and the President of 2A, Defendant Pablo Paoli, discussed SYM's potential acquisition of a 51% majority interest in 2A, and in November 2015, they executed a Mutual Non-Disclosure Agreement ("NDA") pursuant to which the parties were to "exchange confidential and proprietary information, for the purpose of facilitation of business discussions" regarding the possible acquisition. (Countercl., ¶¶ 15, 19 & Ex. C.) 2A states in accordance with the NDA and as required by SYM, it provided financial statements, costs, client lists, sales projections, and contracts to SYM. (*Id.*, ¶ 21.) According to SYM, 2A informed SYM that a Spanish private equity firm, Alia Capital Partners, S.L. (registered in California as Alia Capital Partners, Inc.), had previously shown an interest in acquiring 2A, and had recently retained VLH Accountants and Consultants ("VLH") to conduct a financial purchase audit into 2A and two related companies, Paper Food & Beverages, S. de R.L. de C.V. and Dos Amigos Brands ("the VLH report"). 2A advised SYM that it could obtain a copy of the VLH report to help with its due diligence. (Pl.'s Mot., ECF No. 20-1 at 3.)

According to 2A, in December 2015, a principal of SYM informed Paoli that SYM was looking for another distributor in the United States, and that SYM would provide the new distributor with an exclusive relationship for SYM's products and thus replace 2A. (Countercl., ¶ 23.) SYM also sent various notices seeking to cancel its relationship with 2A, based in part on the allegation that 2A was behind on payments for SYM products. (*Id.*, ¶ 24.) By late 2016, numerous customers canceled their orders with 2A because they were buying SYM products at a lower price from another distributor, and SYM stopped providing product to 2A. (*Id.*, ¶¶ 26-27.)

SYM alleges in its Complaint that 2A failed to pay a balance of over $893,000 on an open book account and breached a promissory note, and that

Paoli breached an individual guaranty. (Compl., ¶¶ 9, 13, 16.) 2A alleges in its Counterclaim that SYM breached the parties' NDA and improperly used its confidential information to replace 2A as its exclusive importer and distributor in the United States. (Countercl., ¶ 36.) 2A further alleges SYM committed fraud and deceit when it represented to Paoli that SYM wanted to acquire a majority interest in 2A and that the confidential information would be used exclusively to evaluate the potential acquisition. (*Id.*, ¶¶ 43, 44.)

    On February 1, 2018, SYM served a subpoena to produce documents upon Alia, requesting by February 20, 2018 the production of documents and communications between Alia and VLH relating to the VLH report. (Pl.'s Mot., ECF No. 20-1 at 3; Martinez Decl. in Supp. of Pl.'s Mot., Ex. 2, ECF No. 20-2 at 10-19.) On February 15, 2018, counsel for 2A and Paoli (collectively "Defendants") wrote a letter to Alia objecting to the subpoena and instructing Alia to not produce any documents in response thereto. (Pl.'s Mot., ECF No. 20-1 at 4; Martinez Decl. in Supp. of Pl.'s Mot., Ex. 4, ECF No. 20-2 at 21-22.) Defendants' counsel copied SYM's counsel on the letter. (*Id.*) On February 27, 2018, Fernando Martinez Aguirre ("Mr. Martinez Aguirre"), a partner of Alia, sent SYM's counsel an email with the subject "Lo que ha llegado, por sit e sirve," which, according to SYM's counsel, translates to, "Which has been delivered so far, if it is useful to you." (Martinez Decl. in Supp. of Pl.'s Reply, ¶ 6 & Ex. B, ECF No. 29-1 at 3, 8.) Attached to the email were pictures of the subpoena and Defendants' counsel's February 15, 2018 objection letter. (*Id.*, ECF No. 29-1 at 8-25.) On March 8, 2018, SYM's counsel's office emailed a copy of the subpoena to Mr. Martinez Aguirre and extended the deadline for Alia to respond until March 14, 2018. (*Id.*, ¶ 7, ECF No. 29-1 at 3.) On March 14, 2018, Mr. Martinez Aguirre informed SYM's counsel by email the documents sought did not belong to Alia, the documents should be obtained from VLH (located in Mexico), Alia would be in breach of property and other laws if it complied with the

subpoena, and the VLH/Alia relationship fell under Mexican jurisdiction. (Martinez Decl. in Supp. of Pl.'s Mot., Ex. 5, ECF No. 20-2 at 31.)

SYM filed its motion for an order to show cause why a contempt citation should not issue against Alia on March 27, 2018. (ECF No. 20.) 2A filed a response on April 11, 2018, and Alia filed an opposition on April 16, 2018. (ECF Nos. 24, 26.) SYM filed a reply on April 23, 2018. (ECF No. 29.) On April 25, 2018, the Court issued an order requiring counsel to meet and confer and file a joint status report to apprise the Court of their efforts. (ECF No. 30.) On May 9, 2018, the parties filed a joint status report indicating the following issues remain unresolved:

    1. Whether the subpoena was validly served upon Alia.

    2. Whether Alia waived its objections to the subpoena, including service.

    3. Whether the documents sought by SYM are relevant to any party's claim or defense and proportional to the needs of the case.

    4. Whether 2A, Mr. Paoli, and the Non-Party Entities (Paper Food & Beverages, S. de R.L. de C.V. and Dos Amigos Brands) have privacy rights in the documents sought by SYM.

    5. If so, whether SYM's need for the information in the documents held by Alia outweighs the privacy rights of 2A, Mr. Paoli, and the Non-Party Entities.

    6. Whether Alia should be compelled to produce any of the documents sought by SYM's subpoena, including the VLH report, and if so, whether information relating to the Non-Party Entities should be redacted. (Joint Status Report, ECF No. 34 at 9.)

## II. LEGAL STANDARDS

Rule 45 of the Federal Rules of Civil Procedure governs discovery of non-parties by subpoena. *See* Fed. R. Civ. P. 45. A non-party witness is subject to the same scope of discovery under Rule 45 as is a party under Rule 34. *See*

Advisory Committee Notes to 1970 Amendment to Fed. R. Civ. P. 45. Under Rule 34, the rule governing the production of documents between parties, the proper scope of discovery is as specified in Rule 26(b). Fed. R. Civ. P. 34(a). Rule 26(b), in turn, permits the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Relevance, for purposes of discovery, is defined broadly and "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Under Rule 45, the non-party served with the subpoena may make objections to the subpoena within 14 days after service or before the time for compliance if less than 14 days. Fed. R. Civ. P. 45(d)(2)(B). On timely motion, the court may quash or modify the subpoena. Fed. R. Civ. P. 45(d)(3)(A). A party cannot object to a subpoena served on a non-party, but rather must seek a protective order or make a motion to quash. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) (citing Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial*, ¶ 11:2291 (2005 rev.); *see also Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 n.5 (9th Cir. 1983) ("[A] subpoena itself is a court order, and noncompliance may warrant contempt sanctions. Once the person subpoenaed objects to the subpoena, however, the provisions of Rule 45(d) come into play. Then the party seeking discovery must obtain a court order directing compliance.").

### III. DISCUSSION

#### A. Service of the Subpoena

Rule 45 provides, "Serving a subpoena requires delivering a copy to the named person." Fed. R. Civ. P. 45(b)(1). Most courts interpret "delivering" as requiring personal service. Wagstaffe, *Rutter Group Practice Guide: Federal Civil Procedure Before Trial*, § 11:2272 (2018 rev.). Rule 45 does not specify

5
17CV1943 LAB (JMA)

what constitutes personal service on a corporation in the United States or in a foreign country. To fill this gap, courts have relied upon the service of process requirements on corporations set forth in Rule 4 of the Federal Rules of Civil Procedure. *See, e.g., In re Grand Jury Subpoenas Issued to Thirteen Corps.*, 775 F.2d 43, 46 (2d Cir. 1985). Under Rule 4, a corporation may be served by "delivering a copy of the [subpoena] to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy to the [person to whom the subpoena is directed]." Fed. R. Civ. P. 4(h)(1)(B); *see also Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 293, 305-06 (S.D.N.Y. 2009); *MGA Entm't, Inc. v. Nat'l Prod., Ltd.*, 2011 WL 13130709, at *2 (C.D. Cal. Dec. 20, 2011); *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 2009 WL 428550, at *2 (N.D. Cal. Nov. 24, 2009). Further, Rule 4 authorizes service in the manner approved under state law. *See* Fed. R. Civ. P. 4(h)(1)(A) (referring to Fed. R. Civ. P. 4(e)(1)); *Houston Cas. Co. v. Int'l Grand Tours, Inc.*, 2008 U.S. Dist. LEXIS 117207, at *13 (N.D. Cal. Oct. 22, 2008) (when serving a subpoena on a corporation pursuant to Rule 4(h)(1)(A), "California law requires that service on a corporation be delivered to a designated agent or officer of the corporation"); *see also* Cal. Code of Civ. Proc. § 416.10(a).

Additionally, "[t]here appears to be a growing trend . . . among courts to allow substitute service of a Rule 45 subpoena, such as mail delivery, so long as the method of service is reasonably calculated to provide timely, fair notice and an opportunity to object or file a motion to quash." *Fujikara Ltd. v. Finisar Corp.*, 2015 WL 5782351, at *5 (N.D. Cal. Oct. 5, 2015). "Absent further guidance from the Ninth Circuit, the court believes the better view is that 'delivery' under Rule 45 means a manner of service reasonably designed to ensure actual receipt of a subpoena by a witness, rather than personal service." *Chambers v. Whirlpool*

*Corp.*, 2016 WL 9451361, at *2 (C.D. Cal. Aug. 12, 2016) (citations and internal quotations omitted).

Here, the proof of service of the subpoena reflects the subpoena was "personally" served on February 1, 2018 by Knox Attorney Service upon Kaitlin Escoandon [*sic*], Executive Assistant, Alia Capital Partners, Inc., c/o Registered Agent for Service of Process: Fernando Martinez Aguirre, 4275 Executive Square, Suite 200, La Jolla, California 92037. (Martinez Decl. in Supp. of Pl.'s Mot., Ex. 3, ECF No. 20-2 at 20.) The address at which the subpoena was served was for Intelligent Office, a virtual office space that provides telephone answering and mail services for clients, including Alia. According to Alia, SYM's process server went to Intelligent Office and asked an Executive Assistant at Intelligent Office, Ms. Dajae Brown, if Alia was located in the building. Ms. Brown responded Alia was not in the building, but it had a mailbox at Intelligent Office. (Alia Opp'n, ECF No. 26 at 3.) After further discussion, Ms. Brown stated she could not physically hand any documents to Alia, but Alia would receive the documents when it came to check its mailbox. (*Id.*) The process server then handed the documents to Ms. Brown, took the business card of Ms. Brown's co-worker, Kaitlin Escandon, and left. Ms. Escandon was not present during Ms. Brown's discussion with the process server. (*Id.*)

Alia argues that service of the subpoena was defective. It argues it never authorized Intelligent Office, nor Intelligent Office employees, to receive subpoenas on its behalf. Further, Intelligent Office does not have a policy authorizing it to receive subpoenas on behalf of Alia, or other clients. (*Id.* at 2.) The Court, however, finds two bases upon which to find service was proper. First, Alia listed this address as the location of its agent for service of process in its corporate filings with the California Secretary of State. Alia has not suggested any other manner in which it could properly be served, and the Court cannot discern any other means by which it could. By listing this address as the location

of its agent for service of process, Alia implicitly authorized Intelligent Office to receive subpoenas on its behalf. If the Court found service at this address to be defective, it would be impossible to ever serve Alia. Second, mail service upon Alia was proper in this instance. SYM effectuated service in the only manner which could reasonably ensure delivery of the subpoena and indeed, service was perfected. Mr. Martinez Aguirre confirmed he actually did receive the subpoena by February 27, 2018 at the latest, when he emailed photos of the same to SYM's counsel. (*See* Martinez Decl. in Supp. of Pl.'s Reply, ECF No. 29-1 at 8-25.)[1]

Although the proof of service did contain a defect, as it reflected the subpoena was served upon Kaitlin Escoandon [*sic*] rather than Ms. Brown, this technical defect is not sufficient to quash service. Accordingly, for the reasons set forth above, the Court finds SYM properly served the subpoena upon Alia.

B. Objections to the Subpoena

It appears undisputed that Alia never served an objection to the subpoena. Rather, Defendants, not Alia, timely objected to the subpoena. SYM contends the objections made by Defendants were improper and did not provide Alia with an adequate excuse for its non-compliance with the subpoena, and Defendants failed to move for a protective order or bring a motion to quash the subpoena as required. (Pl.'s Mot., ECF No. 20-1 at 6.) SYM further contends Defendants' privacy objections are waived because they failed to move for a protective order or to quash the subpoena. (Pl.'s Reply, ECF No. 29 at 5-6.)

A non-party's failure to timely make objections to a Rule 45 subpoena generally requires the court to find that any objections have been waived. *Moon*,

---

[1] The Court notes that the address for Alia set forth in Mr. Martinez Aguirre's email footer is also 4275 Executive Square, Suite 200, La Jolla, California. (*See* Martinez Decl. in Supp. of Pl.'s Mot., Ex. 5, ECF No. 20-2 at 28.)

232 F.R.D. at 636. Nonetheless, "[i]n unusual circumstances and for good cause, . . . the failure to act timely will not bar consideration of objections to a [Rule 45 subpoena]." *McCoy v. Southwest Airlines Co., Inc.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002). "Courts have found unusual circumstances where, for instance, the subpoena is overbroad on its face and exceeds the bounds of fair discovery and the subpoenaed witness is a non-party acting in good faith." *Moon*, 232 F.R.D. at 636.

In view of the overbroad nature of the subpoena, which, as discussed further below, seeks information that is not relevant, the Court finds Defendants' objections to the subpoena have not been waived. *See, e.g., id.* Even assuming *arguendo* Defendant's objections had been waived, because the subpoena seeks information not relevant to the claims or defenses in this case, the Court would still not require compliance with the subpoena. Under Rule 26(c), the Court may sua sponte grant a protective order for good cause shown. *See McCoy*, 211 F.R.D. at 385; Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."); *see also* Fed. R. Civ. P. 26(b)(2)(C)(iii) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules if it determines that . . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1).").

C. <u>Relevance</u>

Under Rule 26,

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Optimize Technology Solutions, LLC v. Staples, Inc.*, 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014) (citation omitted); *see also Fujikura Ltd. v. Finisar Corp.*, 2015 WL 5782351, at *3 (N.D. Cal. Oct. 5, 2015) ("On a motion to quash a subpoena, the moving party has the burden of persuasion under Rule 45(c)(3), but the party issuing the subpoena must demonstrate that the discovery sought is relevant." (citation omitted).).

Defendants contend the subpoenaed documents are not relevant to the claims in the case. They argue the counterclaim asserted by 2A is based on the NDA entered into between SYM and 2A and "damages flowing from an alleged *misuse of confidential information* that was divulged to SYM." (Defs.' Resp., ECF No. 24 at 11 [emphasis in original].) Defendants further argue SYM has failed to make any showing that documents relating to the Non-Party Entities are relevant and as such, contend any documents pertaining to the Non-Party Entities should not be produced, and any reference to them should be redacted if any production is required. (*Id.*, ECF No. 24 at 12-13.)

SYM appears to presume it is entitled to the VLH report simply because 2A invited SYM to obtain a copy of it in 2015 at the time SYM was contemplating acquiring a majority interest in 2A. However, as Defendants argue, this "was not an open-ended invitation for SYM to obtain the [VLH report] *after* SYM had made a decision not to acquire an interest in 2A." (Joint Status Report, ECF No. 34 at 8.) With respect to the relevance of the information sought, SYM offers only that "[t]he information in the Report would corroborate SYM's contention that it decided not to acquire an interest in [2A] because of the financial situation of it and the related companies, instead of an ulterior purpose[]." (Joint Status Report, ECF No. 34 at 5.)

The Court finds the VLH report and communications between VLH and Alia

regarding 2A and the Non-Party Entitles have no bearing on 2A's counterclaims in this case. 2A's counterclaims assert that (1) SYM breached the NDA between 2A and SYM and improperly used its confidential information to replace 2A as its exclusive importer and distributor in the United States, and (2) SYM committed fraud and deceit when it represented to Paoli that SYM wanted to acquire a majority interest in 2A and the confidential information would be used exclusively to evaluate the potential acquisition. (Countercl., ¶¶ 36, 43, 44.) The requested documents pertain to the financial condition of 2A and the Non-Party Entities and do not speak to the issue of whether SYM breached the NDA or acted with fraud and deceit in the manner alleged in 2A's counterclaim. The VLH report is not needed for SYM to defend itself against 2A's counterclaims. If SYM wishes to show it decided not to proceed with acquiring a majority interest in 2A because of the latter's financial condition, it can do so via the information *it actually relied upon* in making this decision in 2015, not a report or communications it has never seen. Although the VLH report could possibly support SYM's argument about 2A's financial condition, this is speculative. Moreover, the subpoena is overbroad on its face as it seeks documents and communications pertaining to two entities which are not parties to this case. SYM has offered no explanation as to how the information sought as to these entities is relevant. The Court finds the information sought in the subpoena is not relevant, not proportional to the needs of the case, particularly given the information is requested from a non-party, and the burden of the discovery sought does not outweigh its likely benefit. Fed. R. Civ. P. 26(b)(1).

In view of the Court's finding that the subpoena does not seek relevant information, the Court need not address the parties' remaining disputed issues.

//
//
//

## IV. CONCLUSION

For the foregoing reasons, SYM's motion for an order to show cause why a contempt citation should not issue against non-party Alia is DENIED. SYM is precluded from enforcing the subpoena issued upon Alia.

**IT IS SO ORDERED**.

Dated: May 24, 2018

Honorable Jan M. Adler
United States Magistrate Judge