# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANCHEZ Y MARTIN, S.A. DE C.V., <br><br>Plaintiff, <br><br>vs. <br><br>DOS AMIGOS, et al. <br><br>Defendants. | CASE NOS. 17cv1943-LAB (LL) <br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [Dkt. 49]** |

Following the deterioration of what was once a productive business partnership, Plaintiff Sanchez Y Martin ("SYM") brought this suit alleging that Defendant Dos Amigos ("2A") breached three separate agreements: an open book account, a promissory note, and a guaranty. Currently before the Court is SYM's motion for summary judgment as to its second cause of action for breach of the promissory note and its third cause of action for breach of the associated guaranty. For the reasons below, the Court **DENIES** SYM's motion. Dkt. 49.

/ / /

/ / /

/ / /

/ / /

/ / /

# **FACTUAL BACKGROUND**[1]

This is a case about a business partnership gone awry. Plaintiff SYM is a Mexican corporation whose principal business involves the sale of consumer goods, primarily soaps and detergents. Defendant 2A is a California-based company that specializes in importing Mexican goods to the United States. Defendant Pablo Paoli is the President of 2A.

Historically, SYM distributed its products in the United States through a variety of different distributors, including 2A. Seeking to expand its market share in the United States, SYM approached 2A in early 2010 to discuss a partnership in which 2A would become the exclusive importer and distributor for SYM products in the United States. Those talks culminated in May 2010 in an exclusive distribution agreement ("EDA"). This EDA was never codified in a formal contract, but the agreement is referenced in a press release from May 3, 2010 and SYM began noting on its product packaging that 2A was the exclusive importer of its goods. *See* Paoli Decl. Exs. 1 & 2, Dkts. 53-7 & 53-8. The exact terms of the agreement are not relevant here, but it generally required that 2A focus its efforts on importing SYM's goods and cease distributing goods from other international manufacturers. With additional skin in the game, 2A also agreed to, among other things, take on a promotional role in advertising SYM's products and help to ensure regulatory compliance in the United States. The parties went through a series of different invoicing and financing arrangements, eventually settling in 2013 on a written consignment

---

[1] This background is taken from either the parties' Joint Statement of Undisputed Material Facts or from the facts as laid out by the non-moving party, 2A. 2A's side of the story primarily comes through a declaration submitted by Pablo Paoli, 2A's president. Although SYM objects to Paoli's declaration on grounds of irrelevance and lack of foundation, the Court finds that, by virtue of his position, Paoli has demonstrated personal knowledge such that his declaration can be considered as evidence in this summary judgment motion. *See Barthelemy v. Air Lines Pilots Ass'n,* 897 F.2d 999, 1018 (9th Cir. 1990) (A declarant's personal knowledge may be shown by "the nature of the declarant's position and nature of participation in the matters."). The credibility of Paoli is, of course, for the jury to decide, not the Court. For that reason, SYM's evidentiary objections are **OVERRULED.** Dkt. 54-1.

agreement whereby 2A would provide a weekly report of all consigned goods that had been sold and would, within 60 days, pay SYM for the value of the goods sold. *See generally* Amended Complaint Ex. 2, Dkt. 44-1. In conjunction with the consignment agreement, Paoli signed a $500,000 promissory note that, according to 2A, functioned as a line of credit. The parties refer to these agreements as their "Open Book Account."

In 2015, the relationship took a turn that led to the present lawsuit. Leadership from the two companies met to discuss forming a new joint venture, "*Nueva Sociedad*," for the purposes of importing and distributing goods in the United States. During these discussions, SYM began making direct sales to American customers, a move that 2A assumed was a temporary one pending the establishment of *Nueva Sociedad*. At some point during these discussions, Paoli was presented with a Secured Promissory Note (the "Note") in the face amount of $1,000,000. This document was to be signed by Paoli on behalf of 2A and in favor of SYM. Along with the Note, Paoli was to sign an Individual Guaranty (the "Guaranty"), under which he would personally guarantee the amount of the Note. Although it is undisputed that Paoli signed both documents, the parties seem to disagree about whether 2A or SYM was the driving force behind the Note, and even seem to disagree about the Note's general purpose. SYM suggests the Note was driven by 2A's desire to "induce [SYM] to keep the open book account open and to convince [SYM] to continue to sell goods to [2A] pursuant to the [Open Book Account]." *See* Amended Complaint, Dkt. 44, at ¶14. 2A, by contrast, suggests that SYM's board required 2A to execute the Note as part of the *Nueva Sociedad* negotiations, as a "*buena fe*," or sign of good faith. Although the parties dispute the background that led to Paoli signing the note, the terms of the Note are undisputed:

> "FOR VALUE RECEIVED, . . . Dos Amigos Distributors, Inc., . . . promises to pay to Sanchez y Martin, S.A. de C.V., . . . the principal amount of One Million and No/100 Dollars ($1,000,000), together with interest on the unpaid principal balance owing from time to time . . . at an a per annum rate [of 2.5%] . . . . Subject to the terms of this Note, all unpaid principal, together with all accrued and unpaid interest and

other amounts payable hereunder, shall be due and payable on [March 6, 2016]." Sanchez Decl., Ex. A, Dkt. 49-2A.

The language in the Guaranty is similarly undisputed:

"In consideration of the foregoing and to induce Lender make the Loans, certain advances of money and to extend certain financial accommodations to Borrower concurrently herewith, the Guarantor does hereby guarantee to Lender, its successors and assigns, the due regular and punctual payment of any sum or sums of money which the Borrower may owe to the Lender now or at any time hereafter, whether evidenced by a promissory note . . . or otherwise . . . ." *Id.*, Ex B at 6.

Despite what appears to be unequivocal language, the terms are inconsistent with the parties' allegations. There is language in the Note and Guaranty suggesting the documents were issued concurrent with a loan. *See, e.g.,* Sanchez Decl., Ex A at 2 ("Maker hereby represents and warrants to Holder that . . . this Note evidences a loan . . . ."); *Id.*, Ex B at 6 ("Lender has agreed to make certain advances of money and to extend certain financial accommodations to [2A] as evidenced by [the Note]."). But there is no claim by either party—and, indeed, at least one explicit disclaimer—that SYM ever loaned 2A $1,000,000.

Needless to say, the *Nueva Sociedad* talks floundered and the Note was never paid. 2A alleges that the *Nueva Sociedad* talks were simply a ruse by SYM to extract confidential 2A information so that SYM could begin distributing directly to commercial customers in the United States. The Note, in 2A's view, was intended to place 2A in a precarious financial situation so it would have no option but to acquiesce to SYM's demands when SYM eventually tried to rescind the parties' agreements.

SYM then brought this suit in San Diego County Superior Court, alleging that 2A breached three contracts: the original Open Book Account, the Note, and the Guaranty. 2A removed the case to this Court, and then filed a counter-claims for fraud and for breach of a non-disclosure agreement the parties entered into during the *Nueva Sociedad* talks.

SYM has moved for summary judgment on its claims for breach of the Note and breach of the Guaranty. The Open Book Account is not directly at issue in this motion.

## **LEGAL STANDARD**

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the moving party's burden to show there is no factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to show there is a genuine factual issue for trial. *Id.* at 324. The non-moving party must produce admissible evidence, and cannot rely on mere allegations. *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1033 n.14 (9th Cir. 2008). This can be done by presenting evidence that would be admissible at trial, *see Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002), or by pointing to facts or evidence that could be presented in admissible form at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). But evidence that is not admissible and could not be presented at trial in admissible form is not enough to resist summary judgment. *See Orr*, 285 F.3d at 773.

The Court does not make credibility determinations or weigh conflicting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Rather, the Court determines whether the record "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

Not all factual disputes will serve to forestall summary judgment; they must be both material and genuine. *Id.* at 247–49. Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Id.* at 248.

## **DISCUSSION**

SYM moves for summary judgment on its claim for breach of the Note and its claim for breach of the Guaranty. The interpretation of both documents is governed by

California law, and because the two claims are intertwined, they largely rise and fall together at this stage.

**I.  Breach of the Note**

To prevail on a breach of promissory note claim under California law, the Plaintiff must show three things: (1) the existence of the note, (2) defendant's breach, and (3) damages. *See Law Offices of Dixon R. Howell v. Valley*, 129 Cal. App. 4th 1076, 1092 (2005) (citing *Coyne v. Krempels*, 36 Cal.2d 257, 261–262 (1950)); *United States v. Chu*, 2001 WL 1382156 ("In a suit to enforce a set of promissory notes, plaintiff must present evidence of the existence of the note, the defendant's default, and the amount due.") (internal citations omitted).

On its face, this appears to be a straightforward case for summary judgment: SYM has in its possession a Note signed by Paoli in which Paoli promised that 2A would pay SYM $1,000,000 on March 6, 2016, an amount the parties apparently agree 2A never paid.  In a vacuum, then, summary judgment seems warranted.

But things are not always as they seem.  While SYM has undoubtedly provided sufficient evidence that the Note exists and is authentic, the Court finds that there are disputed issues of material fact regarding whether the Note truly stood alone or whether it was part of a larger series of agreements.  To be sure, the Note itself does not reference other agreements, but many of the parties' agreements appear to be unspoken.  The parties' EDA, for example, was never codified even though it was reflected in a 2010 press release and later on SYM packaging.  In fact, so strong was this unspoken agreement that 2A ceased distributing products for all other international companies, including major players such as Colgate, Procter & Gamble, and Unilever.  *See* Paoli Decl., Dkt. 53-1, at ¶12.  Following the EDA, the parties continued to modify their financing and invoicing arrangements, often without any sort of formal agreement.  In short, the parties' business history cautions against taking a single agreement out of context.

Further hesitation is warranted based on internal inconsistencies in the Note.  The terms of the Note itself suggest that it was made in connection with a loan. *See, e.g.,*

Sanchez Decl., Ex A at 2 ("Maker hereby represents and warrants to Holder that . . . this Note evidences a loan . . . ."). But neither party claims that SYM loaned 2A $1,000,000—if that were the case, and 2A failed to pay the Note, summary judgment would be clearly warranted. Indeed, SYM expressly disclaims in its reply ever loaning 2A $1,000,000. *See* Reply, Dkt. 54, at 3 ("[T]he Note was not a loan to [2A]; there was therefore no money 'advanced' to [2A] periodically or at all.").

The Court confesses that it is still unsure of the purpose of the Note. The parties, likely because they see strategic benefit in this obfuscation, have not assisted the Court in un-muddying these waters. 2A claims that SYM forced Paoli to sign the Note as a showing of good faith during the *Nueva Sociedad* negotiations. In turn, the *Nueva Sociedad* negotiations were, according to 2A, a ruse to obtain confidential information that SYM could then use to circumvent 2A and distribute directly to American consumers. Paoli alleges that the Note was intended to place 2A in a precarious financial situation such that it would have no choice but to acquiesce to SYM's impending EDA rescission.

For its part, SYM plays coy in attempting to avoid disclosing the actual purpose of the Note. It does this primarily by repeating its argument that the terms of the Note are clear and the Court should enforce it. Nowhere in SYM's motion or reply does it explain the impetus for the Note or what the consideration was.[2] Indeed, only in passing in its *Amended Complaint* does SYM even hint at the purpose: "[I]n order to induce Plaintiff to keep the open book account open and to convince [SYM] to continue to sell goods to [2A] pursuant to the Consignment Agreement, [2A] tendered to [SYM] a written Promissory Note . . . ."). This recounting of events is disputed by Paoli, who says in his declaration

---

[2] The Court acknowledges that the Note says it was "FOR VALUE RECEIVED," and that other courts have found this type of language sufficient to find consideration. *See, e.g. Yokell v. Draper*, 2018 WL 3417514, at *4 (N.D. Cal. July 13, 2018). However, the document at issue in that case, which was a guaranty and not a note, did not suffer from the ambiguities present here. The Court is not concluding that there *was* a lack of consideration in this case, simply that there remain unanswered questions that forestall summary judgment.

that it was Caroline Leikhardt of SYM who sent him the document and insisted that he sign it prior to continuing the *Nueva Sociedad* discussions. See Paoli Decl., Dkt. 53-1, at ¶45-48. These discrepancies, while not insurmountable, suggest that there are disputed issues of fact that should be decided by a jury.

In short, had SYM clearly and convincingly explained to the Court the purpose of the Note, the Court might be comfortable granting summary judgment. As it stands, though, there are disputed issues of material fact regarding whether the Note was inextricably linked to the parties' existing agreements (including the Open Book Account), in which case the interpretation of the Note would also depend on the jury's reading of those prior agreements and the parties' course of dealing. The potential connection between the Open Book Account and the Note also opens up the possibility that the Note would be subject to offsets for the value of 2A's marketing efforts, which the Court is plainly not in a position to evaluate at this stage. Finally, there are disputed issues of fact regarding whether the Note lacked consideration, whether the Note was entered into by mistake, and whether the Note was unconscionable.[3] The Court does not conclude that any of these arguments are true, simply that they are questions for a jury. SYM's Motion for Summary Judgment as to its Second Cause of Action for Breach of the Note is **DENIED.**

II. **Breach of the Guaranty**

To establish a breach of guaranty cause of action, a plaintiff must show that: "(1) there is a valid guaranty, (2) the borrower has defaulted, and (3) the guarantor failed to perform under the guaranty." *Gray1 CPB, LLC v. Kolokotronis*, 202 Cal. App. 4th 480, 486 (Cal. Ct. App. 2011). Because the Court cannot conclude as a matter of law that 2A defaulted under the Note, the Court is also unable to grant summary judgment as to the

---

[3] The parties should not view this list of disputed issues as exhaustive. There may be other disputed issues that have not been briefed.

associated Guaranty.  SYM's Motion for Summary Judgment as to its Third Cause of Action for Breach of the Guaranty is **DENIED.**

## **CONCLUSION**

For the reasons above, SYM's Motion for Summary Judgment is **DENIED**.  Dkt. 49.  SYM's evidentiary objections are **OVERRULED**.  Dkt. 54-1.  2A's request for judicial notice and evidentiary objections are **DENIED AS MOOT**.  Dkt. 53-3, 53-4.

**IT IS SO ORDERED**.

Dated: January 16, 2019

**H**ONORABLE **L**ARRY **A**LAN **B**URNS
United States District Judge